# EXHIBIT E

1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - X

MARK T. DUBLINO,

     Plaintiff

     -vs-

SGT. JUSTIN BIEGAJ, SGT. ROBERT DEE, DEPUTY

BRIAN THOMPSON, DEPUTY FRANK GELSTER,

SGT. MR. CROSS, SGT. MR. ROBINSON,

DEPUTY MR. P. GIARDINA, & DEPUTY SHAWN WILSON,

     Defendants

- - - - - - - - - - - - - - - - - - - - - - - - X

          Case No. 19-CV-6269-DGL-MJP

     Deposition of JACK ROBINSON taken remotely

pursuant to notice on Thursday, June 10, 2021,

commencing at 1:04 p.m.

Reported by:

COMPUTER REPORTING SERVICE

Brittany Needham

16 East Main Street, Suite 7

Rochester, New York 14614      (585) 325-3170

2

2   APPEARANCES:

3        MODICA LAW FIRM

4        By:  STEVEN V. MODICA, Esq.

5        2430 Ridgeway Avenue

6        Rochester, New York 14626

7        Attorneys for Plaintiff.

8

9        ERIE COUNTY DEPARTMENT OF LAW

10       By:  ERIN MOLISANI, Esq.

11       Edward A. Rath County Office Building

12       95 Franklin Street, Room 1634

13       Buffalo, New York 14202

14       Attorneys for Defendants.

15

16

17

18

19

20

21

22

23

24

25

3

2                           INDEX

3   Jack Robinson

4         Examination by Mr. Modica                4 - 39

5


6   Reporter Certificate                              40

7   Witness Certificate                               41

8   Errata Sheet                                      42

9


10   (No exhibits marked.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1          J. Robinson - Examination by Mr. Modica

2                    JACK ROBINSON

3      called herein as a witness, being duly sworn,

4                 testified as follows:

5    EXAMINATION BY MR. MODICA:

6          Q     Good afternoon, Sergeant Robinson.  My name

7    is Steve Modica.  I'm the pro bono counsel appointed to

8    represent Mark Dublino in connection with an action

9    he's brought against you and several other folks.

10         I'm going to ask you a series of questions.  I'll

11   ask you to answer them to the best of your ability.  If

12   you don't understand my question please feel free to

13   ask me to rephrase it and I certainly will do that.

14         We're conducting this deposition by Zoom which is

15   always a little bit more complicated and awkward, so I

16   ask that you wait to respond until my question is done

17   and I'll do my best and wait until you've completed

18   your answer before I speak again.

19         Is that acceptable to you?

20         A     Sure.

21         Q     Sure.  Okay.  And, Sergeant Robinson, are you

22   currently employed by the Jail Management Division of

23   the Erie County Sheriff's Department?

24         A     Yes.

25         Q     And how long have you worked for them?

5

J. Robinson - Examination by Mr. Modica

1

2      A      Twenty-three years.

3      Q      And during 2018 were you working for them?

4      A      Yes.

5      Q      And where were you performing your work at

6  that time?

7      A      I was assigned to training.

8      Q      But physically were you working at the Erie

9  County Holding Center?

10     A      Correct.

11     Q      And were you working at the Erie County

12 Holding Center on the morning of March 9th of 2018?

13     A      Yes.

14     Q      And what was your job assignment that day?

15     A      Training.

16     Q      And would you describe for me generally what

17 your responsibilities were doing training on that day?

18     A      Oh, I can't recall.  I'm assigned to the

19 training aspect.  I do all the training for the Erie

20 County Sheriff's Office out of the Jail Management

21 Division and I also am an instructor at the Police

22 Academy.  So I have a various functions each day:

23 Setting up people to go to training, attending

24 training, putting together classroom training for all

25 the officers, and I also do the peace officer training.

6

J. Robinson - Examination by Mr. Modica

1   So I have a full plate.

3       Q       Does the training that you provide or
4   provided in 2018 include training about how to handcuff
5   someone?

6       A       Yes.

7       Q       All right.  We'll talk more about that later
8   certainly.

9       Do you recall did you have any interactions with
10  Mark Dublino before March 9th of 2018?

11      A       Yes.

12      Q       Okay.  Tell us about that.  What do you
13  recall about any of those interactions before March 9th
14  of 2018?

15      A       Prior to taking over the job as the training
16  sergeant I was in charge of classification and that was
17  the area that assigns all the inmates to their level
18  due to their -- there's a series of factors that give
19  them a level of classification.  We try to keep apples
20  with apples, oranges with oranges.

21      One night I was supervising a unit Mark Dublino was
22  involved in a fight and then a few other times being in
23  charge of classification I also did the disciplinary
24  hearings so he came to me for maybe one or two
25  disciplinary issues that he had in the facility.

7

1          J. Robinson - Examination by Mr. Modica

2     Q    Anything about those disciplinary hearings

3  stand out in your mind either in the content, the way

4  he acted, anything like that?

5     A    Well, the one he actually left our facility,

6  went to Niagara County.  He had something going on a

7  case in Niagara County.  He came back maybe two, three

8  days -- I don't know the extent how long he was out of

9  the building, but when he returned all the inmates that

10  return to our facility get physically searched and in

11  his shoe they found a shank made out of a plastic bowl.

12  So he was written up for that and he came in front of

13  me because I'm the disciplinary officer and he told me

14  his story very agitated saying it wasn't his, but a day

15  later in his property we found a bowl that had a crack

16  in it that was exactly the shape of the shank he had in

17  his sneaker or footwear.

18     Q    And just so I understand better, when you say

19  shank, what do you mean by that?

20     A    It is an improvised or homemade weapon, say

21  Tupperware bowl that he cracked a piece of plastic off

22  almost to make it -- it had a very pointed edge.  It's

23  not going to slice anybody, but you can puncture

24  somebody with the point that it had on it.

25     Q    Do you recall whether you or anyone on behalf

8

1          J. Robinson - Examination by Mr. Modica

2    of the County imposed any discipline for him regarding

3    the shank episode?

4          A    Oh, I'm sure I did.  So --

5          Q    Any recollection as you sit here as to what

6    that was?

7          A    He definitely got an order of SHU or keep

8    lock unit.  He would have done time up there.  Without

9    these records in front of me I don't know the amount of

10   time he got.

11         Q    And by SHU --

12         A    Something like that --

13         Q    Go ahead.  I'm sorry.

14         A    That is special housing unit.

15         Q    Does that generally mean isolation of some

16   sort?

17         A    Yes.

18         Q    Okay.  So is it correct that you had some

19   interaction with Inmate Dublino on March 9th of 2018?

20         A    I arrived at the incident.  I'm not sure --

21   it's been so long.  I'm not really sure what my -- I

22   don't believe I -- other than supervising what was

23   going on that was about it.  I don't believe I had any

24   contact with him.

25         Q    I'll ask you a little bit more about that in

1         J. Robinson - Examination by Mr. Modica

2    a moment, but are you aware or have you ever seen a

3    video that shows at least part of the interaction

4    between perhaps you and others in this case and

5    Mr. Dublino outside the attorney conference room on

6    March 9th of 2018?

7         A    Yes.

8         Q    And what I'd like to do is I'm going to show

9    that video to you and what I'd ask you to do is if you

10   see yourself at all in the course of the video if you

11   could tell me so I could stop the video that would be

12   very helpful just so I can identify you and your

13   movement at least as shown in the video.

14        Is that acceptable to you?

15        A    Yes.

16        Q    All right.  So -- all right.  So, Sergeant

17   Robinson, first of all, can you see the screen that

18   I've shared?

19        A    Yes.

20        Q    Okay.  And I'm going to hit the play button

21   in just a second, but just for purposes of the record

22   I'm showing you what's been marked in this case as

23   Deposition Exhibit A.

24             MS. MOLISANI:  I'm sorry.  Are you able to

25   make it any bigger, Steve?

10

1          J. Robinson - Examination by Mr. Modica

2     BY MR. MODICA:

3          Q     You know, why don't I do this.  Let me --

4     yeah, because I want you to be able to see it.  That's

5     obviously important.  So let me do this.  Is that

6     better?

7          A     Yes.

8          Q     Okay.  Great.  All right.  So just for

9     purposes of the record is it correct to say that this

10    video that I'm showing you consists of four separate

11    boxes so to speak?

12         Top left showing what's demarcated as the Alpha

13    Hallway - first let's start with that - is that

14    correct?

15         A     Yes.

16         Q     And then the box below it is designated as

17    Attorney Visit Sallyport.  Do you see that?

18         A     Yes.

19         Q     And across on the right side at the top of

20    the screen a demarcation of Attorney Visit A, do you

21    see that?

22         A     Yes.

23         Q     And then finally although no picture in that

24    frame yet at the bottom right it's indicated that it's

25    Attorney Visit B.  Do you see that?

11

1         J. Robinson - Examination by Mr. Modica

2    A     Yes.

3    Q     Terrific.  Okay.  So I'm going to hit play.

4    If you could let me know as soon as you see yourself, I

5    would appreciate that.  All right.

6         And I'm going to start playing it now.

7    A     Oh, there I am.

8    Q     Okay.  So I'm going to back up a little bit

9    because I think I didn't stop this as quickly as I

10   should have.

11        So first of all direct me to which of the four

12   windows so to speak did you see yourself?

13   A     I was in the Alpha Hallway the top left and

14   then I'm just going in the door on the bottom left

15   Attorney Visit Sallyport.

16   Q     Okay.  I'm going to back that up because I

17   went a little far.  I apologize for that.

18        So you tell me kind of when --

19   A     Oh --

20   Q     So let me move up a little.

21   A     Okay.  I am right there on the top.

22   Q     Is this you right here?

23   A     Yes.

24   Q     Okay.  So just for purposes of the record,

25   we're looking at the video on the Alpha Hallway screen,

1          J. Robinson - Examination by Mr. Modica

2     the timestamp on the video is ten twenty-two and

3     forty-nine point three four one seconds a.m. and I

4     believe the witness has indicated that he is present.

5          In this particular frame he is toward the wall

6     about to go through the door, and fair to say, Sergeant

7     Robinson, you are clean-shaven on your head, so is that

8     you?

9          A     Correct.

10         Q     All right.  And I'll continue with it through

11    and if you could just try to trace your actions here

12    that would be helpful.  All right?

13         A     Stop.

14         Q     Okay.

15         A     You've got to back it up.

16         Q     Yep.

17         A     Right there.  Well, right --

18         Q     Yeah.  Sorry.

19         A     You're going too far.

20         Q     All right.  So let's go back.

21         A     That's not me.

22         Q     Oh, that's not you.  Okay.  All right.  So

23    now I stopped it at ten twenty-two -- oh, that's not

24    you, right?

25         The Attorney Sallyport, neither of those gentlemen

1          J. Robinson - Examination by Mr. Modica
2    depicted there are you, correct?
3          A     Correct.
4          Q     Okay.  Sorry.
5          A     Stop.  You see the big guy in the bottom left
6    coming through?
7          Q     Yes.  This right here?
8          A     Yes.  I'm going to be behind him.
9          Q     You're going to be behind him.  Okay.  All
10   right.  So again we just were looking at the Attorney
11   Visit Sallyport box of the video, correct?
12         A     Yes.
13         Q     Okay.  All right.  I'm going to -- so this is
14   you right here, sir?
15         A     Correct.
16         Q     Okay.  All right.  So that's -- so again for
17   purposes of the record we're focused on the Attorney
18   Visit Sallyport box of the video and the witness has
19   indicated he is coming through the door coming from the
20   Alpha Hallway into the Attorney Visit Sallyport area
21   and we stopped the screen at the time of ten twenty-two
22   and fifty point two three six seconds on that day which
23   is March 9th of 2018; is that correct?
24         A     Correct.
25         Q     All right.  I'm going to continue back and

14

1          J. Robinson - Examination by Mr. Modica

2    feel free to just identify where you go and what you do

3    next.  Okay?

4        A    Stop.

5        Q    Okay.  So --

6        A    Upper right -- upper right Attorney Visit A

7    you can see just the top of my head.  I'm behind the

8    guy you have -- there I am right there.

9        Q    Right there.  Okay.  So this is -- all right.

10   So just for purposes of the record we've stopped it on

11   the Attorney Visit A box, we're looking at the pause in

12   the time of ten twenty-two and fifty-five point one

13   five six seconds a.m. on March 9th and the witness has

14   indicated that he is seen to the right of the screen

15   and I'm going to say second row would be a fair way to

16   describe that?

17       A    I'd go third.

18       Q    Third.  Okay.  Yeah, that's probably correct.

19   And again, is it one indication that we can identify

20   that it's him is it appears to be a person with a

21   shaved head.

22       All right.  I'm going to continue to go --

23       A    You don't have to continue.  Before you go

24   on, Attorney Visit B that's the back of my head at ten

25   twenty-two fifty-five in the timestamp.

15

1          J. Robinson - Examination by Mr. Modica

2          Q     Oh, okay.  So is that right here which I'm

3    circling?

4          A     Correct.

5          Q     You're standing up, right?

6          You're not -- there seems to be another gentleman

7    with a shaved head that appears to be at a lower level.

8    That's not you, correct?

9          A     No, it is not.

10          Q     Okay.  I'm going to hit play again and please

11    stop me as you'd like.

12          A     I'm going to be in the video the rest of the

13    time I would assume.

14          Q     Okay.  And so again --

15          A     There's me the upper right now it looks I

16    guess you could say the first row.

17          Q     Okay.  And again that would be for purposes

18    of the record we're looking at the Attorney Visit A box

19    and the witness has indicated that he is in the first

20    row and we've stopped it at ten twenty-two and

21    fifty-eight point nine six zero seconds.

22          And, Sergeant Robinson, do we also see the back of

23    your head in the Attorney Visit B box?

24          A     I would say it is closest to the door on the

25    left-hand side of that bottom video looking forward.

16

J. Robinson - Examination by Mr. Modica

Q        Correct.  Okay.  Thank you.  And again just
for purposes of the record that Attorney Visit B box is
at the time of ten twenty-two and fifty-eight point
nine seven three seconds a.m. again on March 9th, 2018.

Okay.  I'm going to resume again.  Now, it looks
like -- I've paused it in the Attorney Visit A box of
ten twenty-three and zero point nine six two seconds.
Can you tell me are you visible or not visible at this
time?

A        No.

Q        And do you recall what if anything may have
made you not visible in the screen at this moment?

A        No, not at this point.

Q        Is it possible that you went to the floor or
went to a lower level for some reason?

A        Well, if they asked for handcuffs I may have
reached into my back pocket to get my handcuffs so I
would have lowered myself to hand them to him, but like
I said, I can't recall.

Q        Understood.  And also in fairness the cameras
that we're looking at now, those shots, there's parts
of those that you can't see, you can't see everything
from floor to ceiling; is that fair?

A        In what I'm looking at now yes.

17

1          J. Robinson - Examination by Mr. Modica

2     Q     And as far as you know the cameras, the

3  images that we're seeing are not edited in any way, are

4  they?

5     A     I don't believe so.

6     Q     Okay.  I'm going to continue.  Now I've

7  stopped Attorney Visit A at ten twenty-three and four

8  point nine six six seconds and there's a gentleman with

9  his back to us also with a shaved head.  Can you tell

10 is that you, Sergeant Robinson?

11    A     No, it is not.

12    Q     Okay.  Do you know who that is?

13    A     I believe it was the first officer and he's

14 wearing a sweater.  That might be Deputy Thompson.

15    Q     All right.  And I'm going to play it again

16 and if you can tell me if and when you reemerge at all

17 that would be helpful.

18    A     Stop.  I'm not sure, bottom right the

19 Attorney Visit B that I can't tell, but it could be me.

20 I can't really -- there's -- there was a second officer

21 down there also with I guess a clean-shaven head.

22    Q     Okay.

23    A     I can't see the sleeve if it's me or not.

24    Q     Okay.  And again just for purposes of the

25 record the witness is referring to the box entitled

1       J. Robinson - Examination by Mr. Modica

2   Attorney Visit B and specifically at the time I paused

3   it of ten twenty-three and eleven point nine eight six

4   seconds.

5       And I'll ask you because we had some testimony,

6   Sergeant Robinson, earlier in the case I believe Deputy

7   Gelster was also in the area and I believe respectfully

8   that he is clean-shaven on his head as well.  Do you

9   know whether that's Deputy Gelster?

10      A    I cannot tell.

11      Q    All right.  I'm going to resume again and

12  feel free to stop me.

13      A    Okay.  That's me.

14      Q    Okay.  So since we ran it further you were

15  able to confirm that the person we've been looking at

16  in Attorney Visit B the clean-shaven gentleman is in

17  fact you?

18      A    Correct.

19      Q    And just for purposes of the record, the

20  witness was able to confirm that once we stopped it at

21  the Attorney Visit B window at the time of ten

22  twenty-three and fourteen point seven eight nine

23  seconds.  Thank you for doing that.

24      All right.  I'm going to resume again and then feel

25  free to take me through any of your movements from

19

1          J. Robinson - Examination by Mr. Modica

2     there.

3          A     I have a question.  If I don't leave the

4     video do you need to keep having me say there I am,

5     there I am, there I am?

6          Q     No.

7          A     Okay.

8          Q     No, I mean, if we can see you.  If you leave

9     the visual I'd like to know, but otherwise if we've

10    identified who you are, that's fine.

11         A     Okay.

12         Q     Okay.  Now I've stopped it at the Attorney

13    Visit B window at ten twenty-three and twenty-four

14    point five zero zero seconds.  It appears to be as if

15    you are bent down in some fashion.  Is that a fair

16    characterization?

17         A     Yes.

18         Q     Okay.  Any recollection as to what you were

19    doing at that point?

20         A     I can't -- again, I don't believe I touched

21    the individual.  So I must just be leaning over to make

22    sure they're doing their job.

23         Q     And can you tell who is to your left also

24    kind of leaning down?

25         A     Not right now.  My head is blocking his face

20

1          J. Robinson - Examination by Mr. Modica

2    or her face.

3          Q        Understood.  And again, I don't mean to

4    suggest anything to the witness, but I believe that

5    might be Sergeant Justin Biegaj, but you draw your own

6    conclusion as we run the video forward.

7          A        Okay.

8          Q        But I think based on what we saw earlier it

9    might be him.

10         A        Okay.

11         Q        Okay.  I'm going to resume.

12         A        Yes, that is Sergeant Biegaj.

13         Q        Got it.  I apologize for pronouncing his name

14   improperly.  Thanks.

15         All right.  I'm going to resume.  Again, let's

16   bring it back a bit.  All right.  I have paused the

17   Attorney Visit B window at ten twenty-three and

18   thirty-three point three one two seconds and first I

19   want to just confirm that the gentleman in the middle

20   of the screen with his head shaven clean we believe is

21   you, correct?

22         A        Correct.

23         Q        Okay.  And I would say for the record it

24   appears that your right hand is extended out, but I

25   can't tell what if anything you're doing with your

21

1          J. Robinson - Examination by Mr. Modica

2    right hand.  Can you tell?

3          A      It looks like it's resting on the officer's

4    shoulder.

5          Q      And probably fair to say you can't tell which

6    officer that would be?

7          A      Correct.

8          Q      And any sense or any recollection as to why

9    you would put your hand on the officer's shoulder like

10   in that fashion?

11         A      I'm trying to observe what they're doing.

12         Q      And again you feel like that picture shows

13   you resting your hand on the officer, not on the

14   inmate?

15         A      Absolutely.

16         Q      And I don't think -- in fairness I don't

17   think we can see the inmate in this particular still,

18   ten twenty-three thirty-three point three one two; is

19   that correct?

20         A      Correct.

21         Q      Is it fair to assume though that the inmate

22   is somewhere on the ground outside of the view of us in

23   that particular screenshot?

24         A      Yes.

25         Q      Okay.  I have paused the Attorney Visit B

22

1          J. Robinson - Examination by Mr. Modica

2    window at ten twenty-three and fifty-eight point two

3    three seven seconds and we see two gentlemen in kind of

4    more of the left side of the screen, left middle if you

5    will, both of whom have shaved heads.  Which one is

6    you?

7          A     I'm the one closest to Sergeant Biegaj.

8          Q     Right there?

9          A     No.  The second one.

10         Q     The second one.  Okay.

11         A     Right there.

12         Q     And who is this gentleman right behind you in

13   the glasses?

14         A     That looks like it's Deputy Wilson.

15         Q     Wilson.  Okay.  All right.  I'm resuming the

16   video.  All right.  So now at this moment again we're

17   looking at Attorney Visit B, ten twenty-four and one

18   point two four zero seconds.  Inmate Dublino is up.

19   There is a deputy -- at least one deputy holding him,

20   another gentleman with a clean-shaven head.  Do you

21   recognize that deputy?

22         A     Well, maybe if he turns a little bit more.

23         Q     Okay.  All right.  We certainly know that's

24   not you, correct?

25         A     Correct.

23

                   J. Robinson - Examination by Mr. Modica

1

2       Q     And I'll represent to you that I believe that

3   that's Deputy Frank Gelster, but obviously you'll draw

4   your own conclusion.

5       All right.  I'm going to resume.  I've stopped it

6   again.  It's ten twenty-four and three seconds -- three

7   point six four two seconds, and in the right side of

8   the Attorney Visit B screen is Inmate Dublino and there

9   is a gentleman directly behind him.  Is that you?

10      A     Correct.

11      Q     Okay.  And any recollection as to what you're

12  doing at that point; are you having any physical

13  contact with Inmate Dublino that you recall?

14      A     Not that I'm aware of.  That's Deputy Gelster

15  in between me and Inmate Dublino.

16      Q     Okay.  And that's who I said a few moments

17  ago I thought that person was that.  You agree with

18  that now?

19      A     Yes.

20      Q     Now it looks to me as if you're walking with

21  the group down the hallway into the Attorney Sallyport

22  area and would you just tell me to stop when you see

23  yourself in the Attorney Sallyport area?

24      A     Sure.

25      Q     Are any of those gentlemen -- obviously I

1          J. Robinson - Examination by Mr. Modica

2    know we have Deputy Gelster.  Is this you right here?

3          A      No.

4          Q      Is this you?

5          A      No.

6          Q      Okay.

7          A      Stop.

8          Q      Is that you?

9          A      Yes.

10         Q      Okay.  All right.  So we have paused at the

11   Attorney Visit Sallyport window at ten twenty-four and

12   forty point four four six seconds and the witness has

13   indicated that he is depicted on the bottom right of

14   the screen having already entered the sallyport, not

15   the gentleman in the doorway about to come in; is that

16   fair, sir?

17         A      Correct.

18         Q      And I'm resuming.

19         A      Stop.  Alpha Hallway I guess the center.

20         Q      Is this you?

21         A      No.  Back up.  No.  Back up.  There you go.

22   Right there.

23         Q      Right there.  Okay.  So we've got Alpha

24   Hallway.  Again at that point you look like -- it looks

25   to me as if you're walking by yourself.  It doesn't

1          J. Robinson - Examination by Mr. Modica
2    look like you have your hands on anybody.
3          Again, any recollection of where you're going at
4    that point?
5          A     They're probably taking him to medical.
6          Q     Okay.  What makes you think that?
7          A     Because usually after something like this we
8    take everyone to medical to be evaluated.
9          Q     Okay.  All right.  I'm going to continue.
10   And you've just left Alpha Hallway, again recollection
11   is going toward medical?
12         A     Well, that's -- I don't know if I got on the
13   same elevator as he got on, but the elevator Inmate
14   Dublino got on most likely would have been taking him
15   to medical.  The second elevator may have been
16   following him to medical.  I cannot recall.  I do not
17   recall where it went.
18         Q     Okay.  And then I believe that none of the
19   remainder of the video depicts you in any way, but I'll
20   let it run out and if you see anything that you want to
21   tell me about please do that.
22         Okay.  The video is complete so I'm going to stop.
23   Was there anything that you wanted to comment on from
24   the last pause until the end of the video?
25         A     No.

26

1          J. Robinson - Examination by Mr. Modica

2      Q      All right.  And I thank you for your patience

3  while I was going through that.  I know it's a little

4  tedious.

5      Best that you know is that video complete?

6      A      Yes, to the best that I know.

7      Q      Okay.  Did you prepare any memoranda or use

8  of force report about this incident?

9      A      No.

10      Q      Is there a reason why you didn't?

11      A      Because I did not touch him.

12      Q      And tell me about that generally, is it your

13  understanding or is it the policy of the Erie County

14  Sheriff that if a deputy or a sergeant has physical

15  contact with an inmate that they're required to put

16  something in writing about that?

17      A      Correct.  There will be a report and then a

18  use of force report as well.

19      Q      Tell me originally how were you made aware

20  that there was a need for assistance outside of

21  Attorney Conference Room 3 on March 9th?

22      A      There was a call put out over -- a distress

23  call put out over the radio with the location.

24      Q      And that radio, is that the one that you were

25  wearing on your body at the time?

27

1        J. Robinson - Examination by Mr. Modica

2    A     Yes.

3    Q     And is that commonly known as a 10-99 call?

4    A     Yes.

5    Q     Technically what does that mean?

6    A     Officer needs assistance.

7    Q     Does the jail have a code for an altercation

8    between a person in custody and his lawyer for example?

9    A     Not that I'm aware of.

10   Q     And if you recall where were you when you got

11   the 10-99 call on March 9th?

12   A     I would assume my office.  I don't know.

13   Q     All right.  And certainly we went through in

14   detail what the video showed relative to your

15   participation so to speak, your presence in the area.

16       At any point did you hear Inmate Dublino say

17   anything, again from when you and the rest of the

18   response team went there until you left his presence?

19   A     I cannot recall.

20   Q     Any indication whether Inmate Dublino

21   resisted any of the orders of the deputies or the

22   sergeants or anyone that gave him an order?

23   A     That again I do not recall.  I believe there

24   was difficulty in handcuffing him because he would not

25   put his hands behind his back, but that's -- you know,

28

1          J. Robinson - Examination by Mr. Modica

2     again, I cannot recall.

3          Q     All right.  So you mentioned earlier that you

4     are responsible for training, doing some training.  So

5     I want to ask you a little bit about that.

6          Is there a standard operating procedure as to how

7     someone in custody is supposed to be handcuffed?

8          A     Yes.

9          Q     Could you explain that to me please?

10          A     Their thumbs up, palms out, knuckles

11     touching.

12          Q     Okay.  So I'm very inexperienced in this

13     area.  So I apologize.  I'm going to ask you some silly

14     questions.

15          But, first of all, is the person generally

16     handcuffed with their hands in front of their body or

17     behind their body?

18          A     Behind their back.

19          Q     Okay.  Behind their back.  And when they are

20     behind their back are their palms facing out meaning

21     away from the center of their body or in toward the

22     center of their body?

23          A     Out away from their body.

24          Q     And is there a particular reason why that's a

25     preferred way to handcuff someone?

J. Robinson - Examination by Mr. Modica

A      So their hands, their palms are not facing each other and they can reach into their waistband or pocket area.

Q      So it's in part for the safety hopefully of people like yourself and the other deputies in the jail?

A      For all safety even including the I guess we'll call it this time a subject because this is how it's done pretty much across the board in Western New York.

Q      Are there times when that preferred method of handcuffing someone isn't possible or isn't done?

A      I don't believe so.  Everyone has been trained to do that.  The cuffs may not go on the proper way we'd like them to go on, but that would be about it.

Q      Are you familiar with a concept that's called reverse handcuffing?

A      No.

Q      Okay.  Are you aware of -- have you ever cuffed someone where their palms are facing in?

So we described before that it's behind their back, palms facing away from the center of their body.

Have you ever cuffed someone where their palms were

30

1        J. Robinson - Examination by Mr. Modica

2 facing toward the center of their body?

3     A    I have not.

4     Q    Okay.  Any indication whether Inmate Dublino

5 was cuffed in different ways during the incident on

6 March 9th of 2018?

7     A    I am not.

8     Q    I think just to confirm, it's your testimony

9 that you had no physical contact with Inmate Dublino on

10 March 9th of 2018; is that correct?

11     A    Yes.

12     Q    All right.  At any point do you recall

13 whether you heard Mr. Terranova who claimed he was

14 assaulted by Inmate Dublino say anything?

15     A    No.

16     Q    There's an allegation that Mr. Terranova said

17 someone kicked his ass, meaning kicked Mr. Dublino's

18 ass.  Any recollection of any comments by Mr. Dublino

19 like that or anything else?

20     A    No.

21     Q    When Inmate Dublino was taken to the

22 infirmary is there a camera set up that would show once

23 he left Alpha Hallway going toward the infirmary, do

24 you know?

25     A    There should be a camera in the hallway, yes.

31

1         J. Robinson - Examination by Mr. Modica

2     Q      Now I'm going to ask you about some of the

3  folks that Mr. Dublino has sued here and recite for you

4  in part what he's claiming and whether you saw any of

5  these events as Mr. Dublino claims.

6         So first with Deputy Thompson, do you recall seeing

7  him as part of the response team?

8     A      Yes.

9     Q      And do you recall whether Deputy Thompson was

10 accompanied by his dog, his canine Billy, at that

11 point?

12    A      Yes.

13    Q      At any point did you see Billy having any

14 physical contact with Mr. Dublino?

15    A      No.

16    Q      What if any physical contact did you see

17 between Deputy Thompson and Inmate Dublino?

18    A      It looked like he grabbed him by the shirt

19 from the video.  I did not physically see it.  I just

20 saw it in the video.

21    Q      And were you able to hear any orders that

22 Deputy Thompson gave to Inmate Dublino?

23    A      When I got there, no.

24    Q      And by the time you got there when you first

25 saw Inmate Dublino what if anything do you remember

1          J. Robinson - Examination by Mr. Modica

2    seeing?

3        A      He was lying face down on the ground against

4    the wall.

5        Q      And best that you could tell was he resisting

6    in any way at that point or at any point later?

7        A      I believe that's why I ended up leaning over

8    there because he was resisting to make sure that they

9    were gathering his arm the right way and not putting

10   any undue stress on his shoulder or elbow joint.

11       Q      And at any point did you hear Inmate Dublino

12   complain that he was injured in some fashion?

13       A      No.

14       Q      At any point did you hear Inmate Dublino

15   claim that he was having difficulty breathing?

16       A      No.

17       Q      Now, we observed earlier that the response

18   team included Sergeant Justin Biegaj.  Tell me that

19   again.  I'm going to mess that up ten times.  Sorry.

20       A      Biegaj.

21       Q      Biegaj.  All right.  I have not deposed him

22   yet.  So hopefully I'll get it right by the time I

23   depose him.  So Biegaj.  All right.

24       A      Biegaj.  Say it fast.

25       Q      Biegaj.  All right.  I appreciate that.

1        J. Robinson - Examination by Mr. Modica

2    Thanks for your patience with me.   I appreciate that.

3        A      Uhm-uhm.

4        Q      Mr. Dublino alleges that Sergeant Biegaj

5    stomped and stepped on him while he was on the ground

6    targeting his head and his back.   Did you see any

7    behavior like that?

8        A      No.

9        Q      He also alleges that Sergeant Biegaj put his

10   knee on his back, meaning Dublino's back.   Did you see

11   any contact between Sergeant Biegaj's knee and any part

12   of Mr. Dublino's body?

13       A      No.

14       Q      You identified Deputy Wilson.

15   Do you recall whether you saw Sergeant Robert Dee

16   in the group of folks that responded that day?

17       A      Yes.

18       Q      And can you confirm that he was part of that

19   response team?

20       A      Yes.

21       Q      And Inmate Dublino alleges that Sergeant Dee

22   and Deputy Wilson grabbed his arms and his hands, bent

23   them in abnormal positions with extreme pressure which

24   injured himself.   Any recollection about their behavior

25   and that allegation?

34

1          J. Robinson - Examination by Mr. Modica

2     A     No.

3     Q     Now I'll represent to you - and I can run the

4  video back if you'd like - that from the time that

5  Deputy Thompson arrived and got Inmate Dublino on the

6  floor until the time that he arose in the manner that

7  we watched earlier it was about a minute and twenty

8  seconds.

9     A     Okay.

10    Q     Can you give me a sense as to how long if at

11 all it typically takes to handcuff someone in a

12 circumstance like that?

13    A     If somebody is actively resisting and the

14 position against the wall that he was in it could be

15 very difficult.  So, I mean, it's -- it's tough to give

16 a time.

17    Q     Is there -- could you give me an estimate of

18 if there was no -- if someone was not resisting how

19 long would you expect it to take to put on handcuffs in

20 the manner we described it earlier, so behind the back,

21 palms facing away from the center of the body, how long

22 would you expect that would take?

23    A     Start to finish less than twenty seconds.

24    Q     All right.  Sergeant Matthew Cross, was he

25 among the folks that participated as the response team?

COMPUTER REPORTING SERVICE
(585) 325-3170

35

1      J. Robinson - Examination by Mr. Modica

2      A      Yes.

3      Q      And Inmate Dublino alleges that Sergeant

4   Cross stood directly over him and stomped on his legs,

5   his ankles and his feet while he was on the floor.  Did

6   you see any behavior by Sergeant Cross of that nature?

7      A      No.

8      Q      Two deputies as well are named in this

9   lawsuit, Peter Giardina and Deputy Gelster.  I want to

10  ask you a little bit about them.

11       So Inmate Dublino alleges that he was picked off

12  the ground by his arms and his shoulders and escorted

13  to the infirmary by those deputies.  I think in the

14  video we identified Deputy Gelster.

15       Do you remember did you see Dr. Giardina as well?

16      A      Yes.

17      Q      And he alleges that on the way to the

18  infirmary that you ordered them to wrench -- quote,

19  "wrench him," which Inmate Dublino describes as bending

20  his arms and his wrists with pressure into the

21  handcuffs.  So can you address that?  Is that something

22  that you did?

23      A      No.

24      Q      Do you recall giving Deputies Giardina and

25  Gelster any instructions as they accompanied him to the

1        J. Robinson - Examination by Mr. Modica

2    infirmary relative to Inmate Dublino?

3        A        The only instruction that I gave and I don't

4    know if Officer -- or Deputy Giardina was part of it

5    was, "When you pick him up do not lift him up by the

6    chain."  That was it.

7        Q        And by the chain you're referring to the

8    chain that connects the handcuffs?

9        A        Correct.

10       Q        And why did you give that instruction?

11       A        Because sometimes people get a little wound

12   up and they don't get people up off the ground properly

13   and I'm here to prevent something like this from

14   happening from people getting into trouble.

15       Q        So meaning that the officers and deputies

16   wanted to pick the inmate up correctly so they don't

17   get in trouble but also that they don't injure the

18   inmate I'm assuming --

19       A        Correct.

20       Q        -- or injure themselves?

21       A        Correct.

22       Q        Now do you recall did you accompany Deputies

23   Giardina and Gelster and Inmate Dublino to the

24   infirmary?

25       A        I stated earlier I don't believe I got on the

1   J. Robinson - Examination by Mr. Modica

2 same elevator.  We'll have to watch that end of the

3 video, but I do not recall going to medical.  I could

4 be wrong, but I don't recall accompanying those three

5 to medical.

6  Q I'll represent to you that there were a

7 number of photos taken of Inmate Dublino after this

8 interaction.  Were you present when those photos were

9 taken?

10  A I don't believe so.

11  Q If I showed you the photos would they help

12 you remember whether you were present at all?

13  A I have no idea.

14  Q All right.

15  A You can show them to me.

16  Q Sure.  It can't hurt.  All right.  So --

17 okay.  Let me show you what has been marked as

18 Deposition Exhibit D.  Can you see that photograph?

19  A Yes.

20  Q Does looking at that photograph help you

21 remember whether you were present when this photograph

22 was taken?

23  A No.

24  Q And is it correct that depicted in this

25 photograph on the left is Deputy Gelster?

38

1          J. Robinson - Examination by Mr. Modica

2     A      Correct.

3     Q      And on the right is Deputy Giardina?

4     A      Correct.

5     Q      And Inmate Dublino in the middle?

6     A      Yes.

7     Q      I show you what we've marked as Deposition

8   Exhibit E.  Same question.  Does looking at that photo

9   help you remember whether you were present when it was

10  taken?

11    A      No.

12    Q      Showing you what we've marked as Deposition

13  Exhibit F.  Same question.  Does that help you remember

14  whether you were present when these photos were taken?

15    A      No.

16    Q      And there's only one more.  Showing you

17  what's been marked as Deposition Exhibit G.  Does that

18  photograph help you remember whether you were present

19  when this photograph was taken?

20    A      No.

21    Q      In looking at Deposition Exhibit G it's a

22  photograph of Inmate Dublino -- I'll represent to you

23  it's a photograph of the hands of Inmate Dublino.

24         Did you at any point look at his hands in the

25  altercation in the hallway or at any point later that

39

J. Robinson - Examination by Mr. Modica

1

2       day?

3           A       No.

4           Q       Do you know whether after Inmate Dublino was

5       initially cuffed whether those cuffs were changed in

6       any way, meaning taken on or off?

7           A       No.

8           Q       I'll represent to you that part of the

9       photographs clearly the last one shows his hands

10      without handcuffs.  Do you know who took the handcuffs

11      off from when he was first subdued until the time the

12      photographs were taken?

13          A       No.

14              MR. MODICA:  Okay.  I do not have anything

15      else, Sergeant.  I appreciate your cooperation and your

16      patience with me.

17              And I don't know if Erin has any questions

18      for you, but if she doesn't we can dismiss you.

19              MS. MOLISANI:  No questions here.  Thank you.

20              MR. MODICA:  Perfect.  Thank you, Sergeant.

21      I appreciate it.

22              THE WITNESS:  You're welcome.

23                      *       *       *

24

25

40

1      J. Robinson - Examination by Mr. Modica

2                REPORTER CERTIFICATE

3

4      I, Brittany Needham, do hereby certify that I did

5  report in stenotype machine shorthand the proceedings

6  held in the above-entitled matter;

7      Further, that the foregoing transcript is a true

8  and accurate transcription of my said stenographic

9  notes taken at the time and place hereinbefore set

10  forth.

11

12  Dated  7/12/21

13  At Rochester, New York

14

15                     S/ Brittany Needham

16                     _____

17                     Brittany Needham

18

19

20

21

22

23

24

25

41

1          J. Robinson - Examination by Mr. Modica

2                    WITNESS CERTIFICATE

3                                        *ORIGINAL*

4    STATE OF NEW YORK      )

5    COUNTY OF              )

6

7        I, JACK ROBINSON, do hereby certify that I have

8    read the transcript of my testimony as taken under oath

9    on Thursday, June 10, 2021 and that said transcript is

10   a true, complete and correct record of what was asked,

11   answered and said during said deposition, and that the

12   answers on record therein, and as may be modified in

13   conformity with the attached errata sheet, are true and

14   correct.

15

16

17

18                              _____

19

20

21   Subscribed and sworn to before me

22   this _____ day of _____, 2021

23   Notary Public

24

25

42

1          J. Robinson - Examination by Mr. Modica
2    In the Matter of:
     UNITED STATES DISTRICT COURT                ORIGINAL
3    WESTERN DISTRICT OF NEW YORK
     - - - - - - - - - - - - - - - - - - - - - - X
4    MARK T. DUBLINO,
           Plaintiff
5          -vs-
     SGT. JUSTIN BIEGAJ, SGT. ROBERT DEE, DEPUTY
6    BRIAN THOMPSON, DEPUTY FRANK GELSTER,
     SGT. MR. CROSS, SGT. MR. ROBINSON,
7    DEPUTY MR. P. GIARDINA, & DEPUTY SHAWN WILSON,
           Defendants
8    - - - - - - - - - - - - - - - - - - - - - - X
              Case No. 19-CV-6269-DGL-MJP
9    Errata sheet for the examination before trial of JACK
10   ROBINSON taken on Thursday, June 10, 2021.
11   PAGE          LINE          REMARKS
12   _____         _____         _____
13   _____         _____         _____
14   _____         _____         _____
15   _____         _____         _____
16   _____         _____         _____
17   _____         _____         _____
18   _____         _____         _____
19   _____         _____         _____
20   _____         _____         _____
21   _____         _____         _____
22   _____         _____         _____
23   _____         _____         _____
24
25

COMPUTER REPORTING SERVICE
(585) 325-3170