UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARK T. DUBLINO,

        Plaintiff,                       **Case # 19-CV-6269-DGL-MJP**

v.

SGT. JUSTIN BIEGAJ, et al.,

        Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

BY:   *s/ Steven V. Modica*
        STEVEN V. MODICA, ESQ.

*Pro Bono Attorney for Plaintiff*
Modica Law Firm
2430 Ridgeway Avenue
Rochester, NY 14626
(585) 368-1111
Steve@ModicaLawFirm.com

1

## INTRODUCTION

Plaintiff Mark Dublino brought this action *pro se* pursuant to 42 U.S.C. § 1983 (*ECF No. 1*). He alleges that Defendants used excessive force against him on March 9, 2018, in violation of his constitutional rights while he was detained at the Erie County Holding Center. *Id.* Because Dublino was convicted but awaiting sentencing, the Eighth Amendment governs his claim.

The undersigned was appointed to represent Dublino *pro bono* for the limited purpose of completing discovery and responding to dispositive motions (*ECF No. 54*). Dublino and all Defendants were deposed, and the parties engaged in and completed paper discovery.

Defendants filed a Motion for Summary Judgment on October 8, 2021 (*ECF No. 77*). For the reasons that follow, Dublino respectfully submits that there are genuine issues of material fact that preclude summary judgment and therefore Defendants' motion should be DENIED.

## STATEMENT OF FACTS

A full recitation of the material facts may be found in Defendants' Statement of Material Facts (ECF No. 77-14) and Plaintiff's Response to Defendants' Statement of Material Facts, which was submitted simultaneously in support of this response.

## LEGAL STANDARD

A court grants summary judgment when the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a)-(b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). It is the movant's burden to establish the nonexistence of any genuine issue of material fact. If there is record evidence from which a reasonable inference in the non-moving party's favor may be drawn, a court will deny summary judgment. *See Celotex*, 477 U.S. at 322.

Once the movant has adequately shown that there are no genuine issues of material fact, the burden shifts to the nonmoving party to present evidence sufficient to support a jury verdict in its favor, without simply relying on conclusory statements or contentions. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

Defendants argue that they are entitled to summary judgment because Defendants did not violate Dublino's Eighth Amendment rights; Dublino failed to exhaust his claims; Defendants cannot be held liable in their official capacities; certain officers were not personally involved in the alleged constitutional violation; and Defendants are entitled to qualified immunity.

**I.    A QUESTION OF FACT EXISTS AS TO WHETHER DEFENDANTS VIOLATED DUBLINO'S EIGHTH AMENDMENT RIGHTS.**

To determine whether prison officials used excessive force in violation of the Eighth Amendment, a court considers "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). To succeed on such a claim, a plaintiff must prove objective and subjective elements. *Id.* at 7-8.

The objective element is "contextual and responsive to contemporary standards of decency," *id.* at 8-9 (quotation and citation omitted), and requires that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

The subjective component "requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000) (quotation marks and citations omitted). Whether the defendant's conduct was "wanton" turns on

3

"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Blyden*, 186 F.3d at 262-63.

Dublino has satisfied the objective element because he had injuries as a result of the March 9, 2018, incident that were more than *de minimis*. Specifically, Dublino testified to injuries to his wrists, arms, back, and shoulders (*Defendants' Exhibit A at 47, lines 1-2*). He thought his wrists were sprained or fractured because he could barely move them; he could not move his arms; and he had shoulder pain that persists today (*id. at 47, lines 5-23*). Unfortunately, the extent of Dublino's injuries is not well documented because he was never taken to an outside facility for x-rays or other treatment as he requested (*id. at 46, lines 18-21; 47, lines 8, 17-23; 48, lines 1-6; see also ECF No. 32-6 at 25*).

Immediately after the incident, Dublino saw Nurse Moka and reported "pain all over his body" that he rated as 10/10 severe pain (*ECF No. 32-6 at 3*). He testified that, despite Nurse Moka's report to the contrary, he was not actually examined (*Defendants' Exhibit A at 47, lines 17-20*). Later the same day, Dublino saw Nurse Habir. He complained of sharp pain in his hands that he rated as 8/10 severe pain and his knuckles were swollen (*ECF No. 32-6 at 19-20*). Dublino also had lower back pain (*id. at 20*). He testified that, despite Nurse Habir's report, he was not actually examined (*Defendants' Exhibit A at 50-53*).

As to the subjective component, there is a question of fact as to whether Defendants acted wantonly. The Second Circuit has considered the following factors when assessing whether a defendant acted maliciously or wantonly in applying force:

> [T]he extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.

*Houston v. Coveny*, No. 14-CV-6609-FPG, 2020 WL 1151345, at *5 (W.D.N.Y. Mar. 9, 2020) (citing *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)).

As Dublino testified under oath at his deposition, he exited the attorney conference room on his own, followed Defendant Thompson's order to get on the ground and then lie face down, and did not resist being restrained (*Defendants' Exhibit A at 23, lines 19-23; 24, lines 1-23; 25, lines 1-4*).  Thus, under the circumstances, the need for the application of force was minimal.

Despite this, and as video of the incident confirms, at least 16 officers responded to the hallway outside the attorney conference room (*Defendants' Exhibit B*).  They crowded around and on top of Dublino even though he was subdued on the ground and not resisting.  The encounter lasted for one minute and 20 seconds—far longer than it takes to handcuff someone who is not resisting (*see, e.g., Defendants' Exhibit C at 31, lines 14-24*).  Defendants' response and the amount of force used was disproportionate to the need for the application of force.

Although Defendants claim otherwise, Dublino alleges and testified under oath that Defendants stomped and stepped on his head, neck, back, and feet; interfered with his ability to breathe; and bent his arms and wrists in an abnormal fashion (*ECF No. 8 at 4 §§ 2-7; see also Defendants' Exhibit A at 30, lines 14-23; 31, lines 1-23; 33, lines 2-23; 34, lines 1-2; 35, lines 1-23; 40, lines 2-15; 41, lines 9-23; 43, lines 1-23*).  Unfortunately, the video—which came from a camera in a fixed location—does not show all aspects of the encounter.  More specifically, the camera does not show events that occurred when Dublino was on the ground outside of the attorney conference room.

Accordingly, for all the reasons stated, Dublino respectfully submits that there are questions of fact as to whether Defendants subjected him to excessive force and therefore Defendant's Motion for Summary Judgment should be DENIED.

## II. THE GRIEVANCE PROCESS WAS UNAVAILABLE TO DUBLINO WITH RESPECT TO THE MARCH 9, 2018, INCIDENT; THEREFORE, HE DID NOT HAVE TO EXHAUST HIS ADMINISTRATIVE REMEDIES BEFORE FILING THIS LAWSUIT.

The PLRA requires prisoners to exhaust their administrative remedies before suing in federal court with respect to prison conditions. *See* 42 U.S.C. § 1997e. Despite the PLRA's "mandatory exhaustion regime[]," it only requires an inmate to exhaust "available" remedies. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).

> An administrative procedure is unavailable when (1) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is so opaque that it becomes, practically speaking, incapable of use; or (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Amaker v. Bradt*, 745 F. App'x 412, 413 (2d Cir. 2018) (summary order) (quotation marks and citation omitted).

When an inmate argues that prison administrators made the grievance process unavailable to him, he "must point to some affirmative action by a prison official that prevented the inmate from availing himself of the grievance procedures." *Martinaj v. Uhler*, No. 9:18-CV-257-BKS-DJS, 2021 WL 3793769, at *7 (N.D.N.Y. Aug. 26, 2021) (citation omitted). "Verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers have been held to constitute such affirmative action." *Id.* (brackets, quotation marks, and citation omitted).

Dublino admits that he did not file a grievance with respect to the March 9, 2018, incident. He maintains, however, that the grievance process was unavailable to him because Erie County Holding Center staff refused to give him a grievance form, pen, or paper (*Defendants' Exhibit L at 2g; see also Defendants' Exhibit A at 59, lines 4-20; 60, lines 4-23; 61, lines 1-5*). Because

6

prison administrators prevented him from taking advantage of the grievance process, Dublino was excused from exhausting his administrative remedies before filing this lawsuit.

## III. DUBLINO AGREES TO DISMISS HIS OFFICIAL CAPACITY CLAIMS.

For the reasons stated in Defendants' Memorandum of Law in support of their Motion for Summary Judgment, Dublino agrees to dismiss his official capacity claims because the only relief he seeks is monetary damages.

For the reasons stated throughout this memorandum, however, Dublino maintains that he has a viable claim against Defendants in their individual capacities and that questions of fact preclude summary judgment in Defendants' favor.

## IV. DUBLINO HAS SUFFICIENTLY ALLEGED AND TESTIFIED TO DEFENDANTS' PERSONAL INVOLVEMENT IN THE MARCH 9, 2018, INCIDENT.

Defendants Thompson, Biegaj, Dee, Wilson, and Cross argue that Dublino's claims against them should be dismissed because they were not personally involved in any alleged constitutional violation.

"To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command." *Wells v. Colvin*, No. 16-CV-6850-FPG, 2019 WL 4688745, at *6 (W.D.N.Y. Sept. 26, 2019). A supervisory official can be found to be personally involved in several ways, including his direct participation in the alleged constitutional violation. *Cossette v. Noeth*, No. 20-CV-6045 FPG, 2020 WL 8768084, at *2 (W.D.N.Y. June 5, 2020) (citations omitted).

### A.    Deputy Thompson

Dublino alleges in his Amended Complaint that Deputy Thompson was the first to respond to the attorney conference room, that he brought Dublino to the ground, and that he lost control of his dog who then bit Dublino (*ECF No. 8 at 4 § 1*). Dublino testified to the same allegations under oath at his deposition. Specifically, he testified that Deputy Thompson lost control of his dog and the dog bit his right hand (*Defendants' Exhibit A at 25, lines 5-19*). Dublino also testified that Deputy Thompson used force by pressing down on his back (*id. at 26, lines 3-11*).

Thus, Dublino has clearly alleged and testified that Deputy Thompson was personally involved in the March 9, 2018, incident; he has not simply asserted that Deputy Thompson is a link in the chain of command. For the reasons stated above, a question of fact exists as to whether the force used was excessive and therefore summary judgment should be denied.

### B.    Deputy Biegaj

Dublino alleges in his Amended Complaint that Deputy Biegaj stomped and stepped on his back and head while he was face down on the ground and outside the view of the camera (*ECF No. 8 at 4 § 2*). He testified to the same allegations under oath at his deposition. Specifically, Dublino testified that Deputy Biegaj pushed his knees into Dublino's back and jumped on him (*Defendants' Exhibit A at 31, lines 2-23; 32, lines 1-12*).

Thus, Dublino has clearly alleged and testified that Deputy Biegaj was personally involved in the March 9, 2018, incident; he has not simply asserted that Deputy Biegaj is a link in the chain of command. For the reasons stated above, a question of fact exists as to whether the force used was excessive and therefore summary judgment should be denied.

### C.     Sergeant Dee and Deputy Wilson

Dublino alleged in his Amended Complaint that Sergeant Dee and Deputy Wilson grabbed his arms and hands and bent and twist them in abnormal positions with extreme pressure (*ECF No. 8 at 4 § 3*). He testified to the same allegations under oath at his deposition (*Defendants' Exhibit A at 33-40*).

Thus, Dublino has clearly alleged and testified that Sergeant Dee and Deputy Wilson were personally involved in the March 9, 2018, incident; he has not simply asserted that they were a link in the chain of command. For the reasons stated above, a question of fact exists as to whether the force used was excessive and therefore summary judgment should be denied.

### D.     Sergeant Cross

Dublino alleges in his Amended Complaint that Sergeant Cross stomped and stepped on his legs, ankles, and feet while he laid facedown on the floor (*ECF No. 8 at 4 § 4*). He testified to the same allegations under oath at his deposition (*Defendants' Exhibit A at 40, lines 2-15*). Sergeant Cross testified only that he had "brief" physical contact with Dublino (*Defendants' Exhibit I at 14, lines 8-12*).

Dublino has clearly alleged and testified that Sergeant Cross was personally involved in the March 9, 2018, incident; he has not simply asserted that Sergeant Cross was a link in the chain of command. For the reasons stated above, a question of fact exists as to whether the force used was excessive and therefore summary judgment should be denied.

### V.     DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY.

Defendants argue that even if a question of fact exists as to Dublino's claims, summary judgment should be granted in their favor because they are entitled to qualified immunity.

Qualified immunity affords government officials a defense "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wells*, 2019 WL 4688745, at *5 (W.D.N.Y. Sept. 26, 2019) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"A right is clearly established if in light of preexisting law the unlawfulness of the action taken is apparent." *Id.* (citing *Smith v. Coughlin*, 938 F.2d 19, 20 (2d Cir. 1991)). "[I]t is indisputable that freedom from the use of excessive force under the Eighth Amendment is a clearly established constitutional right." *Barrett v. Livingston County*, No. 14-CV-6593-FPG, 2019 WL 1083027, at *17 (W.D.N.Y. Mar. 7, 2019) (alteration and citation omitted).

Because he pleaded an Eighth Amendment excessive force violation and his right to be free from that abuse was clearly established at the time of the March 9, 2018, incident, Dublino submits that Defendants are not entitled to summary judgment on qualified immunity grounds.

## CONCLUSION

For all the reasons stated, Dublino respectfully submits that Defendants' Motion for Summary Judgment should be DENIED.

Dated: December 15, 2021
      Rochester, New York

                                                  BY:   *s/ Steven V. Modica*
                                                          STEVEN V. MODICA, ESQ.

                                                          *Pro Bono Attorney for Plaintiff*
                                                          Modica Law Firm
                                                          2430 Ridgeway Avenue
                                                          Rochester, NY 14626
                                                          (585) 368-1111
                                                          Steve@ModicaLawFirm.com